IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMBER BEN-DAVIES, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. CCB-16-2783 |
| BLIBAUM & ASSOCIATES, P.A., | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * | | |
| BRYIONE K. MOORE, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. CCB-16-3546 |
| BLIBAUM & ASSOCIATES, P.A., | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * | | |
| LARRY CHAVIS and SHARONE CROWELL, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. CCB-17-2220 |
| BLIBAUM & ASSOCIATES, P.A., | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * | | |

## **MEMORANDUM**

These are three separate actions brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland

1

Consumer Protection Act ("MCPA"). Pending before the court is Defendant Blibaum & Associates, P.A.'s ("Blibaum") motion for summary judgment. (ECF No. 50).[1] The actions have been consolidated for the purposes of this motion.

## FACTUAL AND PROCEDURAL HISTORY[2]

At all times relevant to this action, defendant law firm Blibaum & Associates, P.A. ("Blibaum") acted as the agent of Peak Management, LLC ("Peak"), and Henderson-Webb, LLC ("Henderson-Webb), to recover debts owed by the plaintiffs resulting from breaches of residential leases. Blibaum filed breach of contract actions against plaintiffs Amber Ben-Davies, Bryione K. Moore, Larry Chavis, and Sharone Crowell, respectively, seeking damages resulting from breaches of residential leases with either Peak or Henderson-Webb. Blibaum obtained judgments in the District Court of Baltimore County against all four plaintiffs.[3] In each judgment, the court ordered that post-judgment interest would be assessed at the legal rate. As a result of each plaintiff's failure to pay the judgment, Blibaum filed requests for writs of garnishment of wages in the District Court for Baltimore County.[4] Blibaum disclosed that it was

---

[1] Unless noted otherwise, citations to CM/ECF correspond to the docketing numbers for *Ben-Davies v. Blibaum*, Civ. No. CCB-16-2783. The pleadings relating to Blibaum's motion for summary judgment are identical across all three cases.

[2] The parties have a lengthy history, and the court recites the minimum necessary facts here. In its motion for summary judgment, Blibaum includes a section captioned, "Undisputed Facts." (ECF No. 50-1 at 6). The plaintiffs did not contest any of Blibaum's factual assertions in their consolidated response; indeed, they omitted a fact section entirely. Accordingly, the court will treat Blibaum's representation of "undisputed facts" as true.

[3] Blibaum obtained a judgment against Ben-Davies for $2,728.09 on July 19, 2007; against Chavis for $2,992.58 on November 9, 2011; and against Moore for $5,135.75 on March 4, 2013. Crowell entered into a consent judgment with Blibaum for $2,410.42 on April 10, 2014.

[4] Blibaum filed a request for wage garnishment against Ben-Davies on October 13, 2008; against Chavis in January 2012; and against Crowell in February 2015. Blibaum filed its first request for wage garnishment against Moore on August 13, 2015, and its second request on June 8, 2016.

2

using a ten percent post-judgment interest rate in a letter to Ben-Davies, and in the requests for wage garnishment against Moore, Chavis, and Crowell.

Ben-Davies filed her complaint in this court on August 5, 2016, alleging that Blibaum's use of a ten percent post-judgment interest rate violated the FDCPA, the MCDCA, and the MCPA. (Ben-Davies Compl, ¶¶ 1–2, ECF No. 1). Moore filed her complaint on October 25, 2016, alleging the same. (Moore Compl. ¶¶ 1–2, Civ. No. CCB-16-3546, ECF No. 1).[5] Chavis and Crowell filed their complaint on August 7, 2017, alleging violations of the FDCPA and the MCDCA. (Chavis & Crowell Compl. ¶ 1–2, Civ. No. CCB-17-2220, ECF No. 1). Ben-Davies and Moore alleged that because the applicable statutory rate of post-judgment interest is limited to six percent, Blibaum's attempt to collect using a ten percent interest rate violated the FDCPA, the MCDCA, and the MCPA. Chavis and Crowell alleged that Blibaum's attempts to collect on their judgments using the ten percent interest rate violated the FDCPA and the MCDCA (but not the MCPA).

On July 26, 2017, Blibaum and Ben-Davies filed a joint motion requesting that this court certify a question of law to the Maryland Court of Appeals. (ECF No. 17). The parties sought a stay of their lawsuit until the Maryland Court of Appeals decided whether the legal rate of post-judgment interest to be awarded in a breach of contract action, when the underlying contract is a residential lease, is ten percent or six percent. (*Id.* at 1–2). The parties agreed that "the question presented [was] a novel issue of Maryland law." (*Id.* at 2). Blibaum and Moore filed a similar joint motion on July 26, 2017. (Civ. No. CCB-16-3546, ECF No. 21). In light of this court's decision to certify the question of law to the Maryland Court of Appeals, Blibaum, Chavis, and

---

[5] Moore dropped her MCPA claim on December 6, 2016, upon the filing of her amended complaint. (Moore Amend. Compl. ¶¶ 1–2, Civ. No. CCB-16-3546, ECF No. 6).

3

Crowell filed a joint motion to stay their lawsuit until the Court of Appeals decided the question. (Civ. No. CCB-17-2220, ECF No. 5).

On January 19, 2018, the Court of Appeals issued an opinion in *Ben-Davies v. Blibaum & Assocs., P.A.*, 457 Md. 228 (2018), finding that "where a landlord sues a tenant for breach of contract based on a residential lease, and the trial court enters judgment in the landlord's favor against the tenant and the judgment includes damages for unpaid rent and other expenses, a post-judgment interest rate of 6% applies." *Id.* at 233.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48.

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial."

*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### A. FDCPA Claims

The plaintiffs contend that Blibaum violated the FDCPA when it sought to collect on judgments against them using a post-judgment interest rate of ten percent. The FDCPA protects consumers from abusive and deceptive debt collection practices. *United States v. Nat'l Fin. Serv., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). Wrongful debt-collection practices include the collection or attempted collection of "any amount (including any interest . . .) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1). Wrongful debt-collection practices claims brought under the FDCPA must be filed within one year of the alleged violation. 15 U.S.C. § 1692k(d). Thus, for each plaintiff's claim to be actionable under the FDCPA, Blibaum's alleged violation must have occurred less than one year prior to the filing of each complaint. Each plaintiff can point to an occasion when Blibaum's collection or attempted collection of amounts using the ten percent interest rate fell within this actionable window.[6] Blibaum asserts, however, that because it *began* attempting to

---

[6] Ben-Davies received a letter from Blibaum attempting to collect an amount including the ten percent post-judgment interest rate on July 19, 2016, less than one year before the filing of her complaint. (Plaintiffs' Response to Defendant's Motion for Summary Judgment ["Pls.' Resp."], Ex. 1 at 11, ECF No. 51-1). Moore received monthly reports from Blibaum which communicated an amount due that included the ten percent post-judgment interest rate in September 2016, less than one year before the filing of her complaint. (Pls.' Resp. Ex. 7 at 2–3, ECF No. 51-7). Blibaum garnished Chavis's wages in an amount that included the ten percent post-judgment interest rate on October 12, 2016, less than one year before the filing of his complaint. (Pls.' Resp. Ex. 10 at 12–13, ECF No. 51-10). Moore received a monthly report from Blibaum which communicated an amount due that included the ten percent post-judgment interest rate on July 12, 2017, less than one year before the filing of her complaint. (Pls.' Resp. Ex. 13 at 2. ECF No. 51-13).

5

collect from each plaintiff *before* the actionable windows, the plaintiffs' FDCPA claims are time-barred. The current timeliness dispute thus turns on whether Blibaum's collection efforts during the actionable period constitute independent violations of the FDCPA, or whether they are merely continuations of the same unlawful debt collection practice initiated at a date prior to the actionable period.

The Fourth Circuit has not decided whether FDCPA violations that occur outside the statute of limitations period bar plaintiffs from proceeding on subsequent but related debt-collection communications. But courts in this district have generally followed the rule that "the limitations period for FDCPA claims begins from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012); *Archie v. Nagle & Zaller*, P.C., No. GJH-17-2524, 2018 WL 3475429, at *6 (D. Md. July 19, 2018);[7] *Costley v. Bank of America, N.A.*, No. 13-cv-02488-ELH, 2017 WL 5564641, at *6–7 (D. Md. Nov. 20, 2017); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md. 2014); *McGhee v. JP Morgan Chase Bank*, N.A., No. DKC 12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013); *Alston v. Cavalry Portfolio Services, LLC*, No. 8:12-cv-03589, 2013 WL 665036, at *3 (D. Md. Feb. 22, 2013). Courts in this district have held that repeated attempts to collect on a single debt are "subsequent violations of the same type" that "do not restart the limitations period." *Fontell*, 870 F. Supp. 2d at 404 ("Although each notice was undoubtedly unique in that Plaintiff's initial assessment continued to accrue late fees, the notices all related to collection of the same underlying debt."); *see also Costley*, 2017 WL 5564641 at *6 (holding that the plaintiff's FDCPA claim was time-barred

---

[7] Unpublished cases are cited not for their precedential value but for the persuasiveness of their reasoning.

when the defendant's complained-about actions (allegedly harassing phone calls) began before the actionable window but continued into it); *Bey*, 997 F. Supp. 2d at 316 (holding that the defendant's alleged repeated threats to foreclose on the plaintiff "are better viewed as communications regarding the first violation [of the FDCPA], not as discrete and separate violations").

In the cases pending before the court, the plaintiffs claim that Blibaum's actions during the one-year period prior to the filing of their complaints constitute independent violations of the FDCPA. In each case, however, Blibaum began attempting to collect on the debts using a ten percent post-judgment interest rate before the actionable period. Pursuant to clear precedent in this district, the statute of limitations begins to run on FDCPA claims upon the first violation of its type. *Fontell*, 870 F. Supp. 2d at 404.[8] The statute of limitations expired on Ben-Davies's claim on July 11, 2009, one year after she received a letter from Blibaum that disclosed it was assessing a ten percent interest rate, (Ben-Davies Letter of July 11, 2008, Def.'s Mot. Ex. 8, ECF No. 50-11); on Moore's claim on August 13, 2016, one year after Blibaum filed a request for wage garnishment that noted the ten percent interest rate, (Request for Garnishment of Wages: Moore, Def.'s Mot. Ex. 6, ECF No. 50-9); on Chavis's claim on January 26, 2013, one year after Blibaum filed a request for wage garnishment that noted the ten percent interest rate, (Request for Garnishment of Wages: Chavis, Def.'s Mot. Ex. 11, ECF No. 50-14); and on Crowell's claim on February 6, 2016, one year after Blibaum filed a request for wage garnishment that noted the ten percent interest rate, (Request for Garnishment of Wages: Crowell, Def.'s Mot. Ex. 12, ECF No. 50-15). The statute of limitations thus expired prior to the filing of each plaintiff's

---

[8] The Fourth Circuit has not yet ruled on this issue. The plaintiffs rely on opinions from other Circuits not binding on this court.

complaint. Accordingly, the court will dismiss the plaintiffs' FDCPA claims as time-barred and will grant summary judgment in Blibaum's favor.[9]

## B. MCDCA Claims

The MCDCA makes it unlawful for a debt collector to "claim, attempt, or threaten to enforce a right [to collect on an alleged debt] with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). The parties dispute (1) whether the ten percent post-judgment interest rate was the type of "unauthorized charge" proscribed by the MCDCA, and (2) whether Blibaum's mistaken belief that it was authorized to charge a ten percent interest rate satisfies MCDCA's "knowledge" requirement.

### i. Applicability of MCDCA

The parties agree that § 14-202(8) cannot be used to challenge the validity of the underlying debt. The parties disagree, however, on whether Blibaum's use of a ten percent interest rate constituted the type of "unauthorized charge" proscribed by the MCDCA. *See Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 420 (D. Md. 2018) (quoting *Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 Fed. App'x 377, 381 (4th Cir. 2016); *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 678–79 (2018).

Blibaum claims that its assessment of a ten percent interest rate was not an unauthorized charge; rather, it was a mistake regarding the amount owed on the underlying debt. (Def.'s Reply at 15–16, ECF No. 52). Blibaum's argument is that the interest on the debt is inextricable from the underlying debt, and that a challenge to the amount of interest owed is a challenge to the

---

[9] As the FDCPA claims are time-barred, the court need not consider the issue of whether Blibaum's use of a ten percent post-judgment interest rate constituted a bona fide error.

8

validity of the underlying debt. This is not persuasive. While Maryland courts have not yet answered whether a dispute over the amount of interest constitutes a challenge to the underlying debt or a challenge to an unauthorized charge, comparable case law cuts against Blibaum's argument. In *Allstate Lien & Recovery Corporation v. Stansbury*, the Maryland Court of Special Appeals held that a plaintiff's claim was proper under the MCDCA where he disputed the inclusion of a processing fee on top of the valid underlying debt. 219 Md. App. 575, 591, (2014), *aff'd*, 445 Md. 187 (2015). And in *Mills v. Galyn Manor Homeoner's Ass'n*, the Court of Special Appeals suggested that the levying of fines not authorized by the contract governing the underlying debt might constitute a violation of the MCDCA. 239 Md. App at 679 (remanding to the circuit court the question of whether fines not authorized by homeowners' association's governing documents are the type of "unauthorized" charges covered by the MCDCA).

The court finds that the plaintiffs are not challenging the underlying debt; rather, they are challenging the amount of interest added atop that debt. Blibaum's use of a ten percent post-judgment interest rate—four percent higher than the legally permissible rate—is thus the type of unauthorized charge proscribed by the MCDCA.

### ii. "Knowledge" required by the MCDCA

Unlike the FDCPA, the MCDCA is not a strict liability statute; to state a cognizable claim, the plaintiffs also must demonstrate that Blibaum *knowingly* attempted to collect an amount that included an unauthorized charge. Md. Code Ann., Com. Law § 14-202(8). The knowledge requirement, however, "does not immunize debt collectors from liability for mistakes of law." *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 594 (D. Md. 1999); *see also Cooke v. Carrington Mortg. Servs.*, No. CV TDC-18-0205, 2019 WL 3241128, at *6 (D. Md. July 18, 2019) (holding that the defendant mortgage servicing company's lack of knowledge

9

about the foreclosure requirements under Maryland law did not save it from liability under the MCDCA); *Fontell*, 870 F. Supp. 2d at 407–08 (noting that the defendants' "ignorance about the [statute of] limitations period . . . would not save them from liability under the MCDCA")

It is presently undisputed that Blibaum's use of a ten percent post-judgment interest rate was prohibited by Maryland law. *See Ben-Davies*, 457 Md. at 275 ("[W]here a landlord sues a tenant for breach of contract based on a residential lease, and the trial court enters judgment in the landlord's favor against the tenant and the judgment includes unpaid rent and other expenses, a post-judgment interest rate of 6% applies pursuant to [Md. Code Ann., Cts. & Jud. Proc.] § 11-107(b)."). In *Ben-Davies*, the Court of Appeals found that the "plain language" of § 11-107(b) compelled its finding that post-judgment interest rates are limited to six percent when the underlying judgment is related to a residential lease. *Id.* at 266. The Court also noted that "it is evident that the General Assembly carved out an exception to the default post-judgment interest rate of 10% for the benefit of residential tenants" and that it "can fathom no rational explanation as to why . . . the General Assembly would have intended [the exception] to apply to actions in which a landlord seeks possession of the premises, but not actions for breach of contract between landlords and tenants." *Id.* at 269.

Blibaum asserts that it cannot be held liable for knowingly violating § 11-107(b), as prior to the Court of Appeals' decision in *Ben-Davies*, the applicable post-judgment interest rate in these types of cases was an unsettled area of law. In its motion for summary judgment, Blibaum concedes that while it was aware that § 11-107(b) set the post-judgment interest rate on money judgments for rent of residential premises at six percent, it nevertheless concluded that it could charge ten percent interest. The court finds this argument insufficient to shield Blibaum from liability under the MCDCA. In light of the Court of Appeals' admonition that "no rational

10

explanation" supports a reading of §11-107(b) as *not* covering breach of residential lease contracts, Blibaum's decision to charge the higher rate should not be excused. Indeed, "in the context of consumer protection, it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *See Spencer*, 81 F. Supp. 2d at 595. Accordingly, the court will deny Blibaum's motion for summary judgment on the plaintiffs' MCDCA claims.

## C. MCPA Claims

Ben-Davies (but not Moore, Chavis, or Crowell) also alleges that Blibaum's use of the ten percent interest rate violated the MCPA. Under the MCPA, "a person may not engage in any unfair, abusive, or deceptive trade practice" in the "extension of consumer credit" or the "collection of consumer debts." Md. Code. Ann., Com. Law §§ 13-303(4)–(5). A violation of the MCDCA constitutes an impermissible trade practice under the MCPA. *Id.* at § 13-301(14)(iii). However, § 13-104(1) provides that the MCPA does not apply to "[t]he professional services" of, *inter alia*, lawyers. Ben-Davies contends that the exemption does not apply to Blibaum, as "no professional services were provided to the Plaintiffs by Defendant." (Pls.' Resp. at 29, ECF No. 51). Blibaum counters that the exemption requires no such relationship between the parties.

Law firms engaged in professional debt-collection services are exempt from liability under the MCPA. *Hawkins v. Kilberg*, 165 F. Supp. 3d 386, 389–91 (D. Md. 2016); *see also Lembach v. Bierman*, 528 Fed. App'x 297, 304 (4th Cir. 2013) (per curiam) ("Attorneys are clearly not within the scope of the [MCPA]"); *Combs v. Bank of Am., N.A.*, Civ. No. GJH–14–3372, 2015 WL 5008754, at *7 (D. Md. Aug. 20, 2015) ("[L]awyers, acting in their professional capacity, are exempt from the MCPA."); *Mills*, 239 Md. App. at 672–73 ("[T]he MCPA does not apply to the professional services of a lawyer.") (internal marks omitted). Ben-Davies's

11

argument that the exemption does not apply absent a professional relationship between the parties is unavailing. The statute itself contains no such "relationship requirement," and Ben-Davies cites no authority that convinces the court it should break with this district's precedent and narrow the applicability of the MCPA exception. *See Hawkins*, 165 F. Supp. 3d at 391 (dismissing a plaintiff's MCPA claim against a defendant law firm engaged in debt-collection practice pursuant to § 13-104(1)).[10, 11] The court will grant Blibaum's motion for summary judgment on Ben-Davies's MCPA claim.

## CONCLUSION

For the foregoing reasons, the defendant's motion will be granted in part and denied in part.

A separate order follows.

____9/17/19____                                 ____CCB____

Date                                                                                Catherine C. Blake
                                                                                 United States District Judge

---

[10] The plaintiffs cite *Scull v. Groover, Christie & Merritt, P.C.*, 435 Md. 112 (2003), for the proposition that the professional services exemption to the MCPA only applies when there is a professional relationship between the parties. *Scull* does not support this assertion. Rather, the court in *Scull* drew a distinction between the billing practices and the "professional services" of a health care provider, holding that only the latter were exempted from liability under the MCPA. *Id.* at 132. The court agrees with Judge Bredar's conclusion in *Hawkins* that, unlike the billing practices of a health care provider, "which are plainly ancillary to the primary services of a medical practitioner . . . debt-collection services are the bread-and-butter of many law firms." 165 F. Supp. 3d at 391 n.9.

[11] The court is not persuaded by the plaintiffs' policy argument that the court should "harmonize" the MCPA with the MCDCA, which permits liability for lawyers, by narrowing the exemption. Indeed, Judge Bredar dismissed this exact argument in *Hawkins*, concluding that "it is simply not the province of a federal court to intervene on matters of state statutory law where the state's lawmaking body has chosen not to do so." 165 F. Supp. 3d at 391. The court agrees with Judge Bredar.